## LOUIS SCHISSLER *et al.*, Respondents, *v.* ROBERT CHES-SHIRE *et als.*, Appellants.

Treating Jury to Liquor — What will not vitiate Verdict.   Where a jury, on their return from taking a view of the property in controversy, were treated to liquor by a person who had been at the instance of the prevailing party selected by the court to point out the premises, and who had made a map of them for such party: *Held*, that the showing of such person's agency or interest in the result of the suit was not sufficient to vitiate the verdict.

Mining Law — Instructions should be based upon Points Involved.   Where in a suit to recover possession of a mine, plaintiff asked the court to instruct the jury " that the doctrine that plaintiff must recover upon the strength of his own title, and not upon the weakness of that of the defendant, has no application in this case : the real question here involved is, which of the parties, the plaintiff or defendant, has the better right to mine the land in question "; and it was claimed that without it the jury might have presumed the title to be in the government, and therefore found against plaintiff ; but it appeared that as a matter of fact no suggestion or point of the kind was made on the trial :  *Held*, that the refusal to give such instruction was not error.

Appeal from the District Court of the Eighth Judicial District, White Pine County.

This was an action by Louis Schissler, Edward W. Hooper and L. L. Alexander, against Robert Chesshire, L. Yerk and George H. Allen, to recover possession of sixteen hundred feet of mining ground, known as Burning Moscow, in White Pine Mining District. There was a verdict and judgment for the defendants. Afterwards a new trial was granted, at the instance of the plaintiffs, upon the ground that the furnishing of liquor to the jury, as stated in the opinion, was covered by the decision in *Sacramento and Meredith Mining Company* v. *Showers*, 6 Nev. 291, and vitiated the verdict. From the order granting a new trial this appeal was taken by defendants.

*Hillhouse & Tilford* and *D. R. Ashley*, for Appellants.

I. The facts of the case now under consideration are altogether different from those in the case of *Sacramento and Meredith Mining Co.* v. *Showers*. The treating by Tagliabue was an act done with no reference to the trial then pending — was accompanied by no remark with reference to the case, and was suggested, as he himself states, in consequence of the inclemency of the weather, without the procurement or knowledge of any of the defendants. Tagliabue was in no sense of the term an agent of the defendants; certainly not an agent connected with the management of the case. It is true that he had made a survey for them, but that no more renders him an agent of defendants than the attendance and treatment of a patient by a surgeon or physician constitutes the latter an agent of the former, when called upon to testify on behalf of that patient as to the extent of the injuries or disease he had treated.

II. Admitting, however, for the sake of the argument, that Tagliabue was at any time or for any purpose during the trial an agent of defendants, how long did that relation continue, and how far did it extend? He went on the ground at the request of defendants and by order of court. He then returned. Whatever his relation with defendants in going to the mine with the jury, he could not be said to be an agent after the jury left the mine and when the treating was done. The purpose for which he was requested to act had

been accomplished before the jurymen had taken the drinks complained of.

*Harry I. Thornton* and *C. H. Belknap*, for Respondents.

I. Tagliabue was the surveyor and witness of defendants; he was their expert, and paid as such; he was their representative in the character of surveyor, expert, witness — and with the zeal and pride of opinion of an attorney to labor with them for a verdict for his side.    He was their agent and retainer — as much so as their attorney.

Who, that has observed the trial of a mining case, has failed to notice the extreme zeal and partisanship of the expert?  In the solemn character of a witness, he is often more effective than the attorney; and when, as in this case, he has access to the jury, on the trip to the mine, out of the presence of the court, who can estimate fully the effect of his efforts?   He is paid beyond measure of ordinary witnesses, in a sum approximating that paid to attorneys; he aids in the preparation for the trial; works with the attorneys; his testimony is almost always the argument of the advocate; a verdict against his evidence is against him, and he will labor for his side with the jury to prevent it.   See *Sacramento and Meredith Mining Company* v. *Showers*, 6 Nev. 291.

II. It is admitted that in going to the mine Tagliabue was the agent or representative of defendants, by contending that his agency ceased when he left the mine.    Certainly, it could not cease until the return into court; certainly, not while he had the permitted association with them on the trip going, staying, and returning.

III. The court erred in refusing the instruction asked for.   The instruction expressed a principle of law correct in the abstract, applicable in the concrete, and couched in unexceptionable language. *Richardson* v. *McNulty*, 24 Cal. 347.   The necessary impression resulting from the refusal was, that we should have done something more than prove a better right than the right of the defendants.

By the Court, LEWIS, C. J.:

The appellants having obtained a verdict in this cause, the learned judge below set it aside, upon a showing, as it is supposed, that improper civilities had been shown to the jury by Mr. Tagliabue, one of the witnesses, and, as it is claimed, an agent for the appellant. It appears that it became necessary for the jury to go upon the mining claim in controversy for the purpose of familiarizing themselves with certain locations and situations in question in the case.

To this end, it was agreed that each party should designate a person to be appointed by the court to accompany the jury, for the purpose, as stated by the judge below, of pointing out to them the points in regard to which testimony would be given at the trial. The appellants designated for this purpose Mr. Tagliabue. He, with the person appointed by the respondent, together with the sheriff, accompanied the jury to the ground, where the proper explanations were made. On their return, the coach, occupied by Tagliabue and some of the jurors, stopped at a public house, and he invited them to alight and take a drink of liquor with him at the public bar. Several of the jurors accepted his invitation, and drank with him. Further than this, nothing of an improper character appears to have taken place. Tagliabue had, prior to the trial, been employed by the appellants to make a map of the mine, and they had designated him as the person whom they desired the court to appoint to accompany the jury, as already stated. Beyond this he does not seem to have had any relations with the appellants, nor interest of any kind in the suit. It does not appear that he was called as a witness, even, except to the one point of identifying the map made by him. But considering him to be an agent or representative of the appellants, the consequences of his civilities to the jury were for that reason held to be chargeable upon them, and it was thought the case came within the rule announced in *Sacramento and Meredith Mining Company* v. *Showers*, 6 Nev. 291.

It is very clear to us, however, that the facts of this do not bring it within the rule of that case. If Tagliabue were an agent, managing the suit, or if he had any interest in the controversy with the

appellant, undoubtedly that would bring the case within the rule of that referred to.   But nothing of the kind appears.   For aught that is shown in this record, Tagliabue was no more interested in having a verdict rendered in favor of the appellants than of the respondents.   That he had been employed to make a map of the mine for appellants, certainly indicates no interest in favor of them.   He may have done that, and still continued utterly indifferent between the parties, or even been interested against the appellants ; and that, too, was an employment which had been completed before the suit.   His selection by them to accompany the jury to the ground, which was simply for the purpose of " pointing out the. points respecting which testimony was to be introduced," surely does not indicate any interest on his part in favor of appellants.   He may have been selected for that purpose, although entirely indifferent. Nothing could be presumed from such selection, except perhaps that he was familiar with the ground in controversy.

Indeed, there is nothing here inconsistent with entire impartiality or indifference on the part of Tagliabue ; and the presumption is, nothing to the contrary appearing, that he was so.   As is very well said by counsel for appellants, " His employment to make the map no more constituted him an agent in the action than the employment of a physician, who may afterwards be called upon to testify respecting the disease of his patient, could be considered such."   And as to his selection to accompany the jury to the mine, which, it must be remembered, was only for the purpose of designating certain points about which testimony was to be offered, that no more constituted him the agent of the appellants than of the respondents.   His authority and appointment for that purpose were derived from the court — the appellants simply designated him as the person whom they desired to have the court appoint.   It seems to us that the very meagre connection which Tagliabue had with this case is not sufficient to bring it within the rule of *Sacramento and Meredith Mining Co.* v. *Showers.*

The reason of that rule is stated to be, to prevent the jury from being *tempted* to find a verdict against their unbiased sense of the right of the case, by motives of gratitude or of feelings for favors, however slight.   Now, how could the treating of the jury in this

case have any such influence, when it really does not appear that they had any reason to believe that Tagliabue had any interest as to how the verdict might be rendered? If they had no more from which to judge of that fact than we have, they could only have concluded that he was entirely indifferent, and therefore any civilities from him could not in any way have influenced their verdict one way or the other. It would be the same as if an entire stranger had done the same thing. We cannot see that the facts detailed in the record bring this case within either the letter or the spirit of the rule in *Sacramento and Meredith M. Co.* v. *Showers*, nor that the civility shown to the jury by Tagliabue can be considered such irregularity as will authorize a disturbance of the verdict.

The other ground upon which counsel for respondents endeavor to sustain the order, is equally untenable. It was based upon the refusal of the court to instruct the jury that the " doctrine that the plaintiff must recover upon the strength of his own title, and not upon the weakness of that of the defendant, has no application in this case. The real question here involved is, which of the parties, the plaintiff or defendant, has the better right to mine the land in question." The manner in which it was supposed the refusal of this instruction prejudiced this respondent is, that without it, the jury might have presumed the title to be in the government, and upon that ground found against the plaintiff; and to guard against such result alone it seems to have been asked. Had the jury relied upon any such presumption, they would have relied upon a point which does not appear to have been in any way suggested in the case; and, furthermore, against the whole theory of the trial and the instructions given by the court. Among many others of a similar character, they were charged that if they believed from the evidence that the predecessors of plaintiffs posted the notice of the Burning Moscow claim at the point marked, the initial point on plaintiffs' map, on the twenty-third day of December, A. D. 1868, and did two days' work at the point called Burning Moscow shaft on plaintiffs' map, prior to the sixth day of January, 1869, and filed the notice of location in the district recorder's office on the twenty-third day of December, 1868, and that plaintiffs and their predecessors have done two days' work on said claim within each year

after the twenty-third day of December, 1868, they must find a verdict for the plaintiff." How, with such an instruction given to them, could the jury have come to the conclusion that the plaintiff could not recover if the legal title was in the United States, or that it was necessary for him to prove more than they were here told was sufficient to entitle him to recover? We cannot suppose that the jury found a verdict against the plaintiff upon a ground not suggested in the case, and that, too, contrary to the whole theory of the case, and the instructions given to them by the court. To protect him from such possibility, it would appear unnecessary therefore to charge that it was not necessary that the plaintiff should recover upon the strength of his own title, for without it, it would appear *impossible* to suppose that the jury could have found against the plaintiff upon that ground.

Indeed, the jury are over and over again charged, in effect, that they should find a verdict in favor of him who had the better right to mine the ground in controversy, which clearly shows that the absolute legal title was in no way involved. And the question of the real rights of the parties was fully and clearly submitted to the jury, so that the latter portion of the instruction refused was substantially given in several instructions, and so clearly that there could be no mistake about it. Thus the first clause of the instruction was unnecessary for the purpose claimed by counsel, and the second was substantially given. There was therefore no prejudicial error, even if the instructions given were technically correct.

Not only was it useless to give it, but its direct effect would have been to mislead the jury. Upon this point what is said by the district judge, in his opinion, very satisfactorily disposes of it. "It may be true," he says, "that, in the case of unpatented mines, the ultimate title is in the government. But the presumption is, that the title is in the occupant—a presumption which courts will not allow to be rebutted by showing title in the government, which they sustain by the fiction of a supposed grant. But besides that, this is the theory upon which these actions have constantly been maintained; the object of instructions is to instruct the jury, and not to mystify them; but I think the only effect of giving the instruction asked would have been to confuse the jurors. The right of a man

to mine on a particular vein of ore in this country, gained by compliance with the mining laws, which by adoption are a part of the law of the land, is not only popularly regarded as a *title* to the ground, but is so designated in acts of congress, of the state legislature, and in the opinions of courts.   In fact, it is a sort of title; and, though not a perfect or complete title, is the only one we have ordinarily to deal with, and the use or sense of the word employed in connection with these cases can never be misunderstood, or tend in the slightest degree to mislead the jury."

The rights acquired simply by priority of occupation being so generally called a title, and so recognized, as stated by the judge, and there being no possible ground for apprehension that the jury would find against the plaintiff, simply because the real title was in the government, the instruction was only calculated to confuse them, without the possibility of doing any good.   Its refusal was therefore not error.

The order granting a new trial must be reversed.   It is so ordered.

GARBER, J., having been counsel in the court below, did not participate in the foregoing decision.